tion, viz., the same as if they were residents of this state. Judge Peckham, in writing for the court in that case, says:

"The resident has no right to deduct his indebtedness from any specific piece of personal property or from any special chose in action. In a general way, it may be said that he is to be charged with all his personal property, and from that total he may deduct his debts. This cannot be done in the case of a nonresident, although it may, as we assume, be done at his domicile. All we are to do is to assess and tax the sum here invested, and the equities must, as we have said, be adjusted at the domicile of the person."

If, therefore, under this opinion, the domestic corporation were assessed for all of its assets in this state, equity would demand the deduction of all of the indebtedness. Whereas, however, the assessment is for only such part of the assets as are employed within this state, there are, I think, no equities to be adjusted which require the deduction of more than a proportionate amount of the indebtedness.

Not only does this adjustment seem equitable, but otherwise many domestic corporations would wholly escape taxation within this state for the "right to live" which is given by the state, and which is the basis of this tax. Large corporate business can hardly be done without the employment of extensive credit, and with considerable property in other states, as many domestic corporations have, the portion of assets within this state might easily and often be overbalanced by the indebtedness. We are of opinion, therefore, that the Comptroller rightfully interpreted the law as requiring a reduction from the value of the assets in this state only of such proportionate amount of the liabilities of the corporation as is represented by the ratio of the capital stock employed within this state to the entire capital of the corporation.

The determination of the Comptroller should therefore be confirmed, with $50 costs and disbursements. All concur.

---

### HEATER v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Third Department. January 6, 1904.)

1. RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE.

   A woman riding with her husband was not guilty of contributory negligence in failing to look around her husband to observe the approach of a train from his side of the buggy, the train not being visible for more than 60 feet from the track.

2. SAME—INJURY TO CHILD—ACTION FOR SERVICES—MEDICAL ATTENDANCE—EVIDENCE.

   In an action against a railroad to recover for liability incurred by plaintiff for the services of physicians rendered her child who had been injured through defendant's negligence, it did not appear that the claims had been paid, or that any demand had been made for them. The only evidence as to the value of certain of the services was the estimate of a physician, who had no accurate knowledge of their nature or extent, and some of the services were rendered by physicians employed by defendant and some by an expert in a free hospital. *Held*, that plaintiff was not entitled to a recovery based on such services.

¶ 1. See Railroads, vol. 41, Cent. Dig. §§ 1055, 1176.

**8. SAME—NURSING—EXTRA SERVICES.**
    Plaintiff could not recover for extra nursing and care required by the child, in the absence of any evidence of any liability incurred for such services.

Appeal from Trial Term, Sullivan County.

Action by Mary O. Heater against the Delaware, Lackawanna & Western Railroad Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Upon the 22d of November, 1892, the plaintiff, with her husband and child, drove in a buggy from Walpac to Belvedere, in the state of New Jersey. Upon their return home they had occasion to cross the track of the defendant's road at a place called "Hope Crossing." The carriage was struck by one of the defendant's engines, plaintiff's husband was killed, and the child was seriously injured. This action was brought to recover for the services of the child, and also for moneys expended and liabilities incurred by reason of medical attendance and medicines rendered necessary by reason of the injuries which the child sustained. Upon the trial the plaintiff's cause of action for loss of services of the child was dismissed. She recovered, however, a verdict of $1,500. From the judgment entered upon this verdict, and from the order denying defendant's motion for a new trial, this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, and CHESTER, JJ.

Hamilton Odell, for appellant.

William D. Tyndall (Walter K. Barton, of counsel), for respondent.

SMITH, J. Defendant strenuously insists that this complaint should have been dismissed for the contributory negligence of the plaintiff. The horse was being driven by her husband, whose negligence confessedly is not imputable to her. She was riding upon his left, with the care of a 15 months old child, in a stormy and sleety night in November, after dark. Defendant's train came from her right, without warning by bell or whistle. Both she and her husband were unfamiliar with this crossing, neither of them having ever passed it until the morning of the accident. It clearly cannot be said as a matter of law that the plaintiff was guilty of contributory negligence in failing to look around her husband to observe the approach of the train, which could only be seen for about 60 feet before the track was reached. If this were an action to recover for the death of the husband, who was driving, where his negligence was the question involved, a different rule might apply.

We think this judgment, however, must be reversed because of errors committed upon the trial. It is probably true that the plaintiff can recover for any liability she has incurred for physicians' services made reasonably necessary by the injuries which her child sustained, even though she may not have paid those claims. Where, however, the claims have not been paid, and no demand appears to have been made for the payment of those liabilities, the proof should be very clear as to the nature and extent of those liabilities before the defendant should be called upon to pay therefor. Neither the nature of the services rendered by some of the different physicians employed nor the extent of their services is shown with any sufficient clearness upon which can be based a judgment for liability incurred therefor.

Nor has the value of such services been adequately proved. The only evidence as to value is the evidence of a country physician, who has based an estimate without accurate knowledge either of the nature or extent of the services rendered, and, as to some of the special services claimed to have been rendered, without adequate knowledge of the value of such services. Plaintiff has here recovered for the services of one physician employed by the defendant for whose services no liability whatever is shown against the plaintiff. Plaintiff has recovered for services of experts for work done in public hospitals known, as shown by the evidence, as "free hospitals." Without specifying in detail defendant's objections to evidence as to the value of the services rendered, which we deem to have been improperly overruled by the court, it is sufficient to say that we find a proper foundation for a small part only of the judgment which has been rendered in this action.

At the end of the charge the plaintiff's counsel asked the court to charge that they might properly estimate the time and award a reasonable sum for extra nursing and care required by the child. To this the court answered, "Yes," and the defendant excepted. There is no proof of any liability incurred for nursing of the child, and, even if the mother could recover for extra time and nursing required of her, there is no proof of value of such time and nursing. There is no evidence upon which such an estimate of damage could properly be left to the jury, and it was error to allow them thus to increase the verdict as they might choose upon mere speculation.

For these reasons, the judgment must be reversed, and new trial granted.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.